Filed 11/24/20  Flaker v. Butenschoen CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| CYNTHIA FLAKER et al., | B290109 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. KC069823) |
| v. | |
| VAN BUTENSCHOEN et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment and orders of the Superior Court of Los Angeles County.  Dan T. Oki, Judge.  Affirmed.

Cynthia Flaker and Chris Flaker, in pro. per., for Plaintiffs and Appellants.

The Safarian Firm, Harry A. Safarian and Christina S. Karayan for Defendants and Respondents Van Butenschoen and Chih-Yang Han.

Betty Agawa and Ronald Wolfgang Betty for Defendant and Respondent Michael Brennan.

_____

## SUMMARY

Plaintiffs appeal from orders granting two anti-SLAPP (strategic lawsuit against public participation) motions to strike causes of action for malicious prosecution, civil rights violations, and retaliation. (Code Civ. Proc., § 425.16.) They also appeal from an award of attorney fees in connection with one of the anti-SLAPP motions. We affirm the orders.

## FACTS

Plaintiffs Cynthia Flaker and Chris Flaker were tenants who entered into a written residential lease with defendants Van Butenschoen and Chih-Yang Han (collectively Butenschoen) in May 2014. The lease was for a term of one year, followed by a month-to-month tenancy. The rent was $2,000 a month.

Defendants and their lawyer, defendant Michael Brennan, filed an unlawful detainer case on March 1, 2016, to evict plaintiffs for nonpayment of rent in February 2016.

Plaintiffs resisted, first filing a timely motion to quash service of the summons and complaint. The trial court denied that motion and ordered plaintiffs to answer the complaint in five days. Plaintiffs filed a writ petition, challenging the denial of their motion to quash and the order to answer the complaint; they contended the latter order denied their right to file a demurrer.

A few days later, on March 28, 2016, defendants filed a request for entry of default and for clerk's judgment for restitution of the premises. (According to Mr. Brennan's declaration, while plaintiffs alleged they served a copy of the writ petition and notice of stay on Mr. Brennan, he was unaware of the writ filing and his law firm had "no record of receiving it prior to filing the request for default.")

2

On April 18, 2016, after their writ petition was denied, plaintiffs filed a demurrer to defendants' unlawful detainer complaint. But on that same day, a default judgment was entered against plaintiffs for restitution of the premises, presumably because plaintiffs had not filed an answer.

Plaintiffs filed an appeal from the default judgment and a petition for stay pending appeal. The stay was granted on May 5, 2016, conditioned on plaintiffs paying into Mr. Brennan's trust account the rental value of $2,000 per month.

In March 2017, with the appeal still pending, plaintiffs again missed a rent payment. Defendants filed a second unlawful detainer complaint on April 24, 2017, based on past-due rent of $4,000.[1] Various motions were filed, rulings were made, and in September 2017, plaintiffs answered the second unlawful detainer complaint.

In October 2017, six months after defendants filed the second unlawful detainer action, the appellate division reversed the default judgment in the first action. The court held that "in denying a motion to quash an unlawful detainer summons, the trial court may not restrict a defendant's responsive pleading to an answer." (*Butenschoen v. Flaker* (2017) 16 Cal.App.5th Supp. 10, 13.) The court found plaintiffs' demurrer had been timely filed, and the default judgment was void because it had been entered one day before it lawfully could have been entered. (*Id.* at p. 15.)

---

[1] In their appellate briefs, defendants explain this $4,000 was unpaid rent that accrued between the first three-day notice to quit on February 22, 2016, and the date plaintiffs began paying rent under the May 2016 stay pending appeal.

3

On October 27, 2017, shortly after the reversal of the default judgment, defendants filed a request for dismissal of that action. Litigation of the second unlawful detainer complaint continued until it too was dismissed without prejudice on December 21, 2017. (Plaintiffs tell us that a third unlawful detainer action was filed based on a three-day notice to quit issued February 15, 2018.)

Meanwhile, in November 2017, plaintiffs, proceeding in propria persona, filed this lawsuit. They alleged a cause of action for malicious prosecution of the first unlawful detainer case against all defendants; for civil rights violations against all defendants; and for retaliation, fraud, nuisance, and breach of contract against Mr. Butenschoen.

Both Mr. Brennan and Mr. Butenschoen filed anti-SLAPP motions to strike the causes of action for malicious prosecution, civil rights violations, and (in Mr. Butenschoen's case) retaliation. They contended plaintiffs' claims arose from protected activity and lacked the minimal merit necessary to proceed.

Plaintiffs opposed the motions. They admitted it was "undisputed" that the unlawful detainer action was protected speech, and contended only that they were likely to prevail on each of the three causes of action at issue.

Plaintiffs' opposition in each case was supported by declarations from Mr. Flaker. In essence, Mr. Flaker stated that the "underlying issues" arose from uninhabitable conditions in the home, and from Mr. Butenschoen's refusal to repair those conditions, refusal to reimburse plaintiffs for repairs, retaliation against plaintiffs for withholding their rent under the implied warranty of habitability, and charging illegal late fees. (Plaintiffs offered no documentary evidence on any of those points.)

Mr. Flaker also described the litigation leading to the reversal of the default judgment, and the filing of the second unlawful detainer complaint.  He further explained that the civil rights action was based on defendants' use of the state courts to deprive plaintiffs of their civil rights to a habitable dwelling, the right to repair, and so on.  Mr. Butenschoen filed objections to the remaining assertions in Mr. Flaker's declaration, and these were sustained by the trial court.

The trial court granted both anti-SLAPP motions.

As to the Brennan motion, the court found the malicious prosecution and civil rights causes of action arose out of Mr. Brennan's protected activity, and plaintiffs did not meet their burden of producing admissible evidence that would support a judgment in their favor.  The malicious prosecution action was deficient because defendants' October 27, 2017 dismissal of the first unlawful detainer complaint did not reflect on the substantive merits of the complaint, and the second unlawful detainer action had already been pending for six months.

The court also found plaintiffs did not show lack of probable cause; Mr. Flaker's declaration about uninhabitable conditions and repairs was unsupported by any documentary evidence, and his other statements were argumentative and conclusory.  The court saw no evidence of malice.  The civil rights claim under Title 42 United States Code section 1983 was deficient because Mr. Brennan was a private attorney, not a state actor.

For like reasons, the trial court granted Mr. Butenschoen's anti-SLAPP motion with respect to the malicious prosecution and civil rights claims.  The retaliation claim was also legally deficient; Mr. Flaker's declaration was conclusory and did not affirm that plaintiffs were not in default as to payment of rent.

The trial court entered a judgment of dismissal as to Mr. Brennan, who filed a motion for attorney fees. Plaintiffs did not oppose the motion. The court awarded Mr. Brennan attorney fees of $10,800 and $564 in costs.

Plaintiffs filed timely notices of appeal from the orders granting the anti-SLAPP motions and from the award of attorney fees. The appeals were consolidated.

## DISCUSSION

### 1. The Legal Principles

The anti-SLAPP statute and procedures have been described many times.

A defendant may bring a special motion to strike any cause of action "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue . . . ." (Code Civ. Proc., § 425.16, subd. (b)(1).)

When ruling on an anti-SLAPP motion, the trial court employs a two-step process. The moving defendant bears the initial burden of establishing that the challenged allegations or claims " ' "aris[e] from" protected activity in which the defendant has engaged. [Citations.] If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least "minimal merit." ' [Citation.] If the plaintiff fails to meet that burden, the court will strike the claim." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884 (*Wilson*).)

In making these determinations, the trial court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (Code Civ. Proc., § 425.16, subd. (b)(2); *HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212 ["In opposing an anti-SLAPP

6

motion, the plaintiff cannot rely on the allegations of the complaint, but must produce evidence that would be admissible at trial."].)

Our review is de novo. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

## 2.    Contentions and Conclusions

Plaintiffs concede the unlawful detainer actions were protected activity (although they mistakenly assert, as discussed *post,* that their civil rights and retaliation claims were not subject to an anti-SLAPP motion). They contend, however, that they have shown a probability of prevailing on the merits of each cause of action. We do not agree.

### a.    The malicious prosecution claim

To establish malicious prosecution, plaintiffs must show the unlawful detainer actions were pursued to a legal termination in plaintiffs' favor, were initiated or maintained without probable cause, and were initiated or maintained with malice. (*Parrish v. Latham & Watkins* (2017) 3 Cal.5th 767, 775 (*Parrish*).) Plaintiffs did not produce evidence that, if believed, would establish any of those necessary elements. While the failure to establish any one of the three elements would defeat the cause of action, we discuss each element.

#### i.    Favorable termination

The unlawful detainer actions were voluntarily dismissed, and defendants then pursued (plaintiffs tell us) a third unlawful detainer action. The voluntary dismissal of an action may constitute a legal termination in a defendant's favor, but the termination "must reflect on the merits of the underlying action." (*Lackner v. LaCroix* (1979) 25 Cal.3d 747, 750 (*Lackner*), italics omitted.) "It is apparent 'favorable' termination does not occur

7

merely because a party complained against has prevailed in an underlying action.  While the fact he has prevailed is an ingredient of a favorable termination, such termination must further reflect on his innocence of the alleged wrongful conduct.  If the termination does not relate to the merits—reflecting on neither innocence of nor responsibility for the alleged misconduct—the termination is not favorable in the sense it would support a subsequent action for malicious prosecution." (*Id.* at p. 751.)

That is the case here.  The appeal of the first unlawful detainer action had nothing to do with its substantive merit, and neither did its voluntary dismissal.  Defendants filed the second action during the appeal of the first case (more than a year after initiating the first action).  Defendants' declarations state they did so to expedite the eviction process, after plaintiffs' rent payment made in March 2017 did not clear.  The appeal of the first case remained pending for another six months, and when it was finally decided in plaintiffs' favor, defendants voluntarily dismissed it, while continuing the second action.  Under these circumstances, the voluntary dismissal plainly did not "relate to the merits" (*Lackner, supra,* 25 Cal.3d at p. 751), and thus was not a termination in plaintiffs' favor that would support a malicious prosecution action.[2]

---

[2]	Plaintiffs appear to contend the second unlawful detainer action was also maliciously prosecuted.  The second action was not the subject of plaintiffs' complaint, and the anti-SLAPP motions address the causes of action pled in the complaint.  In any event, defendants voluntarily dismissed the second action without prejudice after plaintiffs filed this lawsuit, and shortly thereafter defendants filed a third unlawful detainer action.  As with the first action, plaintiffs have produced no evidence the

8

### ii.     Probable cause

" '[T]he probable cause element calls on the trial court to make an objective determination of the "reasonableness" of the defendant's conduct, i.e., to determine whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable.' " (*Parrish, supra,* 3 Cal.5th at p. 776.) A claim is unsupported by probable cause only if it is legally untenable, that is, only if " ' " 'any reasonable attorney would agree [that it is] totally and completely without merit.' " ' " (*Ibid.*)

Plaintiffs argue in substance that they were legally entitled to withhold payment of rent because of uninhabitable conditions, unreimbursed repairs, and illegal late fees, and that these defenses demonstrate there was no probable cause to file the action.  That is not the case.

It is undisputed that plaintiffs did not pay rent when due. To establish lack of probable cause, plaintiffs had the burden of producing evidence that, if believed, would show defendants knew that, because of uninhabitable conditions (or for some other reason), no rent was due, but filed the action anyway.  (See *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 881 ["when . . . there is evidence that the defendant may have known that the factual allegations on which his action depended were untrue, the jury must determine what facts the defendant knew before the trial court can determine the legal question whether such facts constituted probable cause to institute the challenged

---

voluntary dismissal of the second action reflected on the substantive merits of the case.

proceeding"].)  Plaintiffs say "[a] jury could find the facts as claimed by the Flakers."  We disagree.

Plaintiffs presented no evidence supporting the existence of uninhabitable conditions, except for Mr. Flaker's declaration stating plaintiffs "discovered the uninhabitable conditions" and asked defendants to correct them but they failed to do so.  The declaration did not identify any uninhabitable conditions (or any unreimbursed repairs or illegal fees), simply stating Mr. Flaker's own conclusion that such conditions existed.  A jury could not conclude from Mr. Flaker's vague and conclusory declaration that there were any such conditions, much less that defendants knew no rent was due because of them.  As the trial court observed, Mr. Flaker's declaration was "unsupported by any documentary evidence, such as photographs depicting the substandard conditions, copies of rent checks, copies of repair invoices and/or receipts, and/or communications between plaintiffs and defendants."

Because plaintiffs made no showing that defendants filed the unlawful detainer actions knowing no rent was due, they failed to establish the actions were legally untenable.

### iii.   Malice

The malice element of a malicious prosecution claim " 'relates to the *subjective intent or purpose* with which the defendant acted in initiating the prior action.  [Citation.]  The motive of the defendant must have been something other than . . . the satisfaction in a civil action of some personal or financial purpose.  [Citation.]  The plaintiff must plead and prove actual ill will *or* some *improper* ulterior motive.' "  (*Soukup v. Law Offices of Herbert Hafif, supra,* 39 Cal.4th at p. 292.)

Plaintiffs produced no evidence defendants prosecuted these actions for any other purpose than to regain possession of the property after a failure to pay rent, i.e., the satisfaction of a financial purpose. Plaintiffs argue that Mr. Flaker's declaration "has a long description of malicious tactics" used by defendants, including claims that Mr. Brennan "suborned . . . perjury" by the process server, "manipulated" the trial court into ordering plaintiffs to answer rather than demur, "trick[ed] the untrained and unsupervised court clerks into entering [plaintiffs'] default," and so on. The trial court rightly rejected Mr. Flaker's statements as argumentative and conclusory. Plaintiffs make no showing in their opening brief, nor could they, that the court abused its discretion in so ruling.[3]

b. **The civil rights claim**

Plaintiffs contend the civil rights violation alleged under Title 42 United States Code section 1983 was "not subject to a SLAPP motion." The authorities plaintiffs cite do not support that claim. Indeed, one of them shows plaintiffs are mistaken, citing cases holding that Code of Civil Procedure section 425.16 "applies to federal claims under [section] 1983." (*Tichinin v. City of Morgan Hill* (2009) 177 Cal.App.4th 1049, 1055-1056; see also

---

[3] Plaintiffs also repeatedly complain that defendants refused to continue taking the payments ordered by the trial court as a condition of the stay pending appeal, and then served the second eviction notice for nonpayment of that money as rent, and this showed malice. That is not the case. Mr. Brennan explained in a reply declaration his understanding that once a three-day notice to pay rent or quit is served on a residential tenant, "any acceptance of rent, whether the full amount or a partial payment, nullifies the notice," and that defendants' refusal to accept rent from plaintiffs occurred after that notice had been served.

*Patel v. Chavez* (2020) 48 Cal.App.5th 484, 488 ["section 1983 does not preempt application of the anti-SLAPP statute to section 1983 claims in state court"].)  The other case plaintiffs cite involves the litigation privilege, not the anti-SLAPP statute, and has no relevance here.

Plaintiffs challenge the trial court's conclusion that the civil rights cause of action does not lie because defendants are private parties and thus not acting under color of law, as required for a Title 42 United States Code section 1983 claim.  Plaintiffs cite *United States v. Price* (1966) 383 U.S. 787, 794 (acting under color of law does not require the accused be an officer of the state; "[i]t is enough that he is a willful participant in joint activity with the State or its agents").  Here, there was no joint activity with any state officer.  Filing an unlawful detainer action on behalf of a client does not constitute joint activity with the state or its agents.

### c.     The retaliation claim

Plaintiffs' complaint alleged Mr. Butenschoen, by prosecuting the unlawful detainer actions, retaliated against plaintiffs for exercising their rights to repair and deduct (Civ. Code, § 1942) and to complain about uninhabitable conditions (see §§ 1941 & 1941.1).  Under section 1942.5, if the lessor "retaliates against the lessee because of the exercise by the lessee of the lessee's rights under this chapter . . . , and if the lessee of a dwelling is not in default as to the payment of rent, the lessor may not recover possession . . . within 180 days . . . .  [¶]  . . . [a]fter the date upon which the lessee, in good faith, has given notice pursuant to Section 1942 . . . or has made an oral complaint to the lessor regarding tenantability."  (§ 1942.5,

12

subd. (a)(1).)  Plaintiffs contend their retaliation cause of action is not subject to the anti-SLAPP statute.

For this claim, they cite *Banuelos v. LA Investment, LLC* (2013) 219 Cal.App.4th 323, 335.  *Banuelos* has nothing to do with the anti-SLAPP statute.  *Banuelos* held the plaintiff's complaint stated a cause of action for retaliatory eviction under Civil Code section 1942.5, and further that the cause of action was not barred by the litigation privilege.  (*Banuelos,* at pp. 326, 335.)  Those are not the issues here.  Indeed, the trial court expressly stated, citing *Banuelos,* that the litigation privilege did not bar plaintiffs' section 1942.5 cause of action.

The issues here are whether plaintiffs' retaliation claim arose from defendants' protected activity, and if so, whether plaintiffs have shown the claim has at least minimal merit.  If defendants' " 'speech or petitioning activity *itself* is the wrong complained of' " (*Wilson, supra,* 7 Cal.5th at p. 884), then the claim arose from protected activity.  Clearly the wrong that is the basis for plaintiffs' retaliatory eviction claim is defendants' eviction-related conduct, all of which is protected activity.  That leaves only the question whether plaintiffs have shown a probability of prevailing on their claim defendants' eviction efforts were retaliatory under Civil Code section 1942.5.  They have not.

Plaintiffs were in default as to the payment of rent and, as we have already discussed, they did not present any evidence of uninhabitable conditions or expenses for repairs they made that could be deducted from the rent due.  (Indeed, the only evidence presented of repairs plaintiffs made was presented by defendants, who showed that in September 2014, Mr. Flaker informed defendants of a needed repair he would make, for which

13

plaintiffs deducted $40 from the October 2014 rent.)  As the trial court observed, Mr. Flaker's declaration was "conclusory and [did] not state when he and/or his wife made oral complaints to defendants regarding tenantability in relation to the commencement of the unlawful detainer proceedings, or affirm that they were not in default as to the payment of their rent."  In short, plaintiffs did not show a probability of prevailing on the merits of a retaliatory eviction claim.

### d.     The Brennan attorney fees

Plaintiffs also appeal from the award of attorney fees to Mr. Brennan, saying the amount awarded ($10,800) was unreasonable and excessive.  Plaintiffs did not oppose the motion for attorney fees, and have forfeited this claim.  In any event, their one-paragraph argument without citation of authority does not establish any abuse of discretion.

## DISPOSITION

The orders are affirmed.  No costs are awarded.


GRIMES, J.

WE CONCUR:


BIGELOW, P. J.


STRATTON, J.


14